IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GREGORY SMITH and AMY SMITH,

      Plaintiffs,                                       No. Civ S-11-2108 KJM-EFB

      vs.

QUALITY LOAN SERVICE CORP.;
METLIFE HOME LOANS a division of
MetLife Bank NA; MetLife Bank NA;
DOES 1 through 10, inclusive,

      Defendants.                                     <u>ORDER</u>
_____/

          This matter comes before the court on Plaintiffs' Motion to Remand, and Defendants' Motion to Dismiss and Motion to Strike. ECF Nos. 6, 7 and 9. Having read and considered the arguments presented by the parties in the papers submitted to the court, the court finds this matter appropriate for resolution without a hearing. The court hereby DENIES plaintiffs' motion to remand and GRANTS defendants' motion to dismiss as to plaintiff's sole federal claim. It further REMANDS the remaining state law claims to state court and DENIES defendants' motion to strike as moot.

/////

/////

/////

1

I.  Background

    A.  The Complaint

Plaintiffs Gregory Smith and Amy Smith are residents and citizens of Placer County, California. ECF No. 1–3, Ex. 1 ¶ 1. Defendants MetLife Home Loans and MetLife Bank, N.A. are both banking associations whose main offices are in New Jersey. ECF No. 1. Quality Loan Service Corp. (Quality) is a California corporation with its principal place of business in California. ECF No. 1.

On July 18, 2011, plaintiffs filed an action in Placer County Superior Court against Quality, MetLife Home Loans, a division of MetLife Bank N.A. and MetLife Bank N.A. (collectively referred to as MetLife Bank), and ten Doe defendants, alleging seven claims including violation of the Fair Credit Reporting Act, fraud, unjust enrichment, violations of California Business and Professions Code section 17200, breach of a security instrument, wrongful foreclosure, and quiet title. ECF No. 1-3, Ex. 1. All the claims are related to the events surrounding the 2005 mortgage approval, the 2009 Notice of Default, and the currently-pending foreclosure of plaintiffs' home.

    B.  Procedural Background

On July 18, 2011, plaintiffs filed their complaint in Placer County Superior Court. ECF No. 1-3, Ex. 1. The following day, plaintiffs filed for a temporary restraining order and preliminary injunction to enjoin Quality and MetLife Bank from foreclosing on plaintiffs' property during this action. ECF No. 1–3, Ex. 6.

On July 28, 2011, Quality filed a declaration for non-monetary status as provided by California Civil Code section 2924l.[1] ECF No. 13, Ex. 1.

/////

/////

---

[1] As discussed below, section 29241 provides a mechanism whereby a trustee may be excused from litigation; if there is no objection.

2

1    On August 5, 2011, plaintiffs filed their memorandum of points and authorities in
2 support of their application for preliminary injunction and in response to Quality's declaration of
3 non-monetary status. ECF No. 13, Ex. 2.
4    On August 9, 2011, defendants filed a notice of removal to this court. ECF No. 1.
5    On August 11, 2011, the Placer County Superior Court denied plaintiffs' request
6 for a preliminary injunction. ECF No. 20, Ex. A (Decl. of Janet C. Song).
7    On August 16, 2011, defendants filed a motion to dismiss all of plaintiffs' claims
8 for failure to state a claim for relief, as well as a motion to strike various statements in the
9 complaint.[2] ECF Nos. 6–7. Plaintiffs subsequently file a motion to remand on September 7,
10 2011, challenging both diversity and federal question jurisdiction. ECF No. 9.

## II.    Motion To Remand

A defendant in state court may remove a pending action to federal court so long as the action could have originally been filed in federal court. *See* 28 U.S.C. § 1441(b); *City of Chicago v. International College of Surgeons*, 522 U.S. 156, 163 (1997). Removal may be based on diversity jurisdiction or on federal question jurisdiction. *See* 28 U.S.C. § 1441(b). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction because of improvident removal, the case shall be remanded to state court. *See* 28 U.S.C. § 1447(c); *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1065 (9th Cir. 1979). Even if no party questions the court's subject matter jurisdiction, the court is under a duty to raise the issue *sua sponte*. *See Harris v. Provident Life and Accident Ins. Co.*, 26 F.3d 930, 931 (9th Cir. 1994). The removal statute is construed restrictively; doubts about removal are resolved in favor of remanding the case to state court. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir.1992). The court determines the propriety of removal by asking whether the action could have been

---

[2] The parties' request that the court take judicial notice of a number of documents in support of their motions; the court will resolve such requests below, only as necessary to determine the issues before it.

brought in federal court at the time of removal; that is, given the parties involved in the action and the causes of action asserted in the complaint, the court asks whether there was an actual basis for original federal subject matter jurisdiction when the defendant removed the action. *See Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68–69 (1996); *Libhart*, 592 F.2d at 1065; *United Food & Commercial Workers Union, Local 919 v. Centermark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). In the instant case, defendants removed under both theories of jurisdiction, diversity and federal question.

      A.     Diversity Jurisdiction

In order to bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant. 28 U.S.C. § 1332(a). In the case of removal based on diversity jurisdiction, there must be complete diversity both at the time the action was filed and at the time of removal. *Strotek Corp. v. Air Transport Ass'n of Am.*, 300 F.3d 1129, 1131–32 (9th Cir. 2002). Defendants argue that diversity is established under multiple theories, reviewed below. The court concludes the inclusion of Quality Loan Service as a party to this action defeats diversity jurisdiction.

      1.     Non-Monetary Status

Generally, a declaration of non-monetary status excuses a trustee under a deed of trust from litigation if no objection is made and served within fifteen days after the declaration is filed. Cal. Civ. Code §§ 2924l(a)–(d). The objection must "set forth the factual basis on which the objection is based and shall be served on the trustee." *Id.* § 2924l(c). Where there is a timely objection to the declaration, the trustee is required to participate in the action. *Id.* § 2924l(e) ("In the event of a timely objection to the declaration of nonmonetary status, the trustee shall thereafter be required to participate in the action or proceeding.").

Quality filed its declaration of non-monetary status on July 28, 2011. Plaintiffs filed their timely objection on August 5, 2011, stating their basis for objecting to Quality's non-monetary status; their filing was four days prior to defendants' notice of removal dated August 9,

4

2011.  Defendants dispute that the objection was properly filed, arguing that plaintiffs "never filed a formal objection . . . as a separate pleading . . . ." ECF No. 20 at 7:17–18.  But no such requirement appears in the statute and defendants cite no case law to support this assertion.  The statute provides only that the "objection shall *set forth the factual basis* on which the objection is based and shall *be served on the trustee*." Cal. Civ. Code § 2924l(c) (emphasis added).  Both of these requirements have been met.  Under §§ 2924l(c) and (e), plaintiffs' objection was sufficient to deny Quality's request to be treated as a non-monetary party to this action.

        2.      Trustee

Defendants also argue that Quality's role as a "foreclosure trustee" eliminates any monetary interest it has in the matter.  ECF No. 20 at 8–11.  Defendants argue that two theories eliminate any monetary interest Quality might have: (1) as trustee, Quality incurs no liability for its actions with respect to the non-judicial foreclosure process under California Civil Code section 2924(b); and (2) Quality's actions in the mailing, publication and disclosure of notices, as well as in the performance of foreclosure procedures, are privileged communications under California Civil Code section 47.  ECF No. 20 at 9:5–13.

        a.      California Civil Code Section 2924(b)

California Civil Code section 2924(b) states that "[i]n performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary . . . ." A trustee who is "guilty of fraud or deceit" does not act in good faith.  *Scott v. Security Title Ins. & Guarantee*, 9 Cal.2d 606, 611 (1937).  Plaintiffs' claims of fraud are in essence claims that Quality did not act in good faith as required by section 2924(b).  ECF No. 1–3, Ex. 1 ¶ 25.  If plaintiffs' claims are true, defendants' actions would make them ineligible for the protections provided by section 2924(b).

        b.      California Civil Code Section 47

Regarding California Civil Code section 47, defendants rely upon *Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029 (E.D. Cal. 2009), asserting that section

5

47 immunizes Quality from tort claims other than malicious prosecution. ECF No. 20 at 11:1–6; *Champlaie*, 706 F.Supp. 2d at 1062 ("[A] trustee's actions in executing a non-judicial foreclosure are privileged communications . . ., and as such will not support a tort claim other than one for malicious prosecution."). *Champlaie* addressed a negligence claim, relying upon *Kachlon v. Markowitz*, 168 Cal. App. 4th 316 (2008). In *Kachlon*, the court recognized that the privileges afforded to parties under § 47 "apply to all torts except malicious prosecution claims." *Kachlon*, 168 Cal. App. 4th at 336 (citing *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006)). The *Kachlon* court held that the privilege afforded by section 47, when applied to claims under section 2924, is only that of "qualified immunity." *Kachlon*, 168 Cal. App. 4th at 333; *see also* Cal. Civ. Code §§ 47(b)(2)–(3), (c)(1) (§ 47 provides two types of immunity; absolute and qualified). Qualified immunity protects only parties who act "without malice." *Id.* Accordingly, it is not that the section 47 privilege will not support tort claims other than malicious prosecution, rather it applies to all tort claims other than malicious prosecution. Whether section 47 provides immunity depends upon which privilege applies and the alleged conduct of the defendant. Applying section 47's qualified immunity to plaintiffs' fraud claims against Quality, all non-judicial foreclosure related actions by Quality are privileged so long as they were taken without malice.

In the non-judicial foreclosure context, "malice is defined as actual malice, meaning that the publication was motivated by hatred or ill will towards the plaintiff *or* by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336 (citations omitted). Plaintiffs' fraud claims allege that defendants made false representations "with full knowledge" of their falsity. ECF No. 1–3, Ex. 1 ¶ 25. This allegation is sufficient, if true, to overcome the qualified immunity privilege, as plaintiffs are only required to show the defendant "lacked reasonable grounds for belief in truth . . . ." to establish malice. *Kachlon*, 168 Cal. App. 4th at 336.

A claim of fraud inherently is an assertion that a defendant did not act in good faith. *See Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996). If a defendant could bar a fraud claim by simply making a conclusory statement that the trustee complied with the state law requirement to act in good faith, no plaintiff would ever be able to reach the merits of a claim for fraud in a non-judicial foreclosure. *See* Cal. Civ. Code § 2924(b); *Id*. § 47(c)(1). Because diversity is determined as a threshold matter, neither section 2924(b) nor section 47 bars a determination that diversity jurisdiction exists.[3] Quality's role as trustee alone is insufficient to show it has no monetary interest in this matter.

### 3. Fraudulent Joinder

Defendants argue that removal was proper despite the presence of a Quality, a non-diverse defendant, because Quality was "fraudulently joined" or a "sham" defendant. *See Caterpillar*, 519 U.S. at 68. A resident defendant has been fraudulently joined if the plaintiff fails to state a claim against that defendant, and the failure is "obvious according to the well-settled rules of the state." *United Computer Sys. v. AT & T Corp.*, 298 F.3d 756, 761 (9th Cir. 2002). In the Ninth Circuit, a non-diverse defendant is deemed to be fraudulently joined if, after all disputed questions of fact and all ambiguities in the controlling state law are resolved in the plaintiff's favor, the plaintiff could not possibly recover against the party whose joinder is questioned. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40, 42 (9th Cir. 1992). A court may look beyond the pleadings to determine if a defendant is fraudulently joined, but "a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge. *See Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 993–95 (D. Nev.

---

[3] Defendants point to a number of documents in their requests for judicial notice in support of their motion to dismiss and opposition to plaintiffs' motion to remand, including: (1) the December 29, 2006 Deed of Trust; (2) the September 24, 2009 Assignment of Deed of Trust; (3) the September 24, 2009 Notice of Default and Election to Sell Under Deed of Trust; and (4) the August 18, 2011 Substitution of Trustee. While these documents may provide evidentiary support to defend against claims of fraud, they do not affect the jurisdictional hurdle that the court must meet in order to even consider the claims. Thus the court need not decide on the requests for judicial notice at this time.

2005) (collecting cases); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Accordingly, a defendant seeking removal based on an allegedly fraudulent joinder must do more than show that the complaint at the time of removal fails to state a claim against the non-diverse defendant. *See Burris v. AT & T Wireless, Inc.*, 2006 WL 2038040, at *2 (N.D. Cal. 2006) (*citing Nickelberry v. DaimlerChrysler Corp.*, 2006 WL 997391, at *1–2 (N.D. Cal. 2006)). "Remand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (*citing Burris*, 2006 WL 2038040 at *2 (internal citation omitted)). Here, the court looks to any one of plaintiffs' seven claims for relief to determine if at least one defeats the motion to dismiss on these grounds.

        A court may dismiss a complaint for failure to state a claim "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). It must accept all factual allegations pleaded in the complaint as true, and construe and draw all reasonable inferences in favor of the nonmoving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009). Leave to amend should be granted unless the defect is not curable by amendment. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).

        In this case, plaintiffs argue that defendants committed a fraud upon them both at the time of closing of their loan and again during the foreclosure procedures. ECF No. 1–3, Ex. 1 ¶¶ 21-29. In their motion, defendants argue that (1) plaintiffs do not plead their claim for fraud with the particularity required by *Lazar* and Federal Rule of Civil Procedure 9(b), and (2) plaintiffs' claim is time-barred. *See* ECF No. 20 at 16 (incorporating arguments from motion to

dismiss); ECF No. 6 at 12-14 (arguing that the fraud claims are not adequately pleaded and are barred by statute of limitations).

Assuming without deciding that plaintiffs' fraud claims are subject to the three-year statute of limitations imposed by California Civil Procedure section 338, some but not all of the fraud claims are barred. While the claims of fraud surrounding the closing of the loan appear to fall outside the limitations period, the claims of fraud surrounding the foreclosure action did not arise until 2009, approximately two years prior to filing this action. The foreclosure-related claims are not time-barred by section 338.

Moreover, given the posture of the case, as currently proceeding on a complaint originally filed in state court, any deficiencies in the complaint would tend to support granting leave to amend.[4] *Padilla*, 697 F. Supp. 2d. at 1159 (the defendant must show that the plaintiff "would not be afforded leave to amend his complaint . . . .") (citations omitted); *see Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (finding that leave to amend should be granted "if it appears at all possible that the plaintiff can correct the defect."); Fed. R. Civ. P. 15(a). Having found at least one potentially viable claim against Quality, the court concludes this defendant was not fraudulently joined.

### 4.     Conclusion

None of defendants' theories allows the court to treat Quality as a nominal defendant. The court finds that there is not complete diversity among the parties. As such, the court may hear this matter only if it has subject matter jurisdiction over a federal claim.

/////

/////

/////

---

[4] As noted above, defendants' requests for judicial notice, if granted, may well provide evidentiary support to defend against plaintiffs' fraud claims. At this early stage, however, they fail to show it is not "possible that the plaintiff can correct the defect." *Lopez*, 203 F.3d at 1130.

9

B.   Federal Question Jurisdiction

Federal question jurisdiction is governed by 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States." Generally, "[a] case arises under federal law where federal law creates the cause of action or where the vindication of a right under state law necessarily turns on some construction of federal law." *Republican Party of Guam v. Gutierrez*, 277 F.3d 1086, 1088–89 (9th Cir. 2002) (*quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 8–9 (1983)). "The presence or absence of federal-question jurisdiction is governed by the well-pleaded complaint rule, which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal quotation marks omitted). Although a complaint may include references to federal statutes, that fact alone is not dispositive. *Lippitt v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1040 (9th Cir. 2003) ("mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction"); *quoting Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). "When a [state law] claim can be supported by alternative and independent theories—one of which is a state law theory and one of which is a federal law theory—federal question jurisdiction does not attach because federal law is not a necessary element of the claim." *Rains v. Criterion Sys., Inc.*, 80 F.3d 339, 346 (9th Cir. 1996).

Defendants argue the court has federal question jurisdiction based on (1) the inclusion of the Fair Credit Reporting Act (FCRA) claim in the complaint; and (2) the fraud cause of action's alleging the "defendants knowingly and intentionally concealed material information . . . required to be disclosed by federal and state statutes and regulations . . . ." ECF No. 20 at 5:20–22.

While the complaint does assert a federal law theory on the face of the complaint, it only vaguely references an unidentified federal statute or regulation that purportedly requires

certain disclosures in the lending process. ECF No. 1–3, Ex. 1 ¶ 21. It also references an alternative state statute or regulatory source to support the fraud claim. *Id*. The presence of alternative state law theories to support the allegations of fraud undermines the position that the claim gives rise to a question of federal law. *Rains*, 80 F.3d at 346.

The FCRA cause of action, however, does support federal question. An issue of federal law is presented on the face of the complaint and the FCRA statute gives rise to a federal cause of action. *See* 15 U.S.C. § 1681(s)(2)(b); *Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1060 (9th Cir. 2002). Removal thus was proper. Plaintiffs' motion to remand is DENIED.

III.   Motion To Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." A court may dismiss "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri*, 901 F.2d at 699. A motion to dismiss under this rule may also challenge the sufficiency of fraud allegations under the more particularized standard of Rule 9(b) of the Federal Rules of Civil Procedure. *Vess*, 317 F.3d at 1107. Leave to amend should be granted unless the defect is not curable by amendment. *See id* at 1108.

The court must accept all factual allegations pleaded in the complaint as true and construe those facts and draw all reasonable inferences in favor of the nonmoving party. *See Cahill*, 80 F.3d at 337–38. The court need not, however, accept "legal conclusions" as true. *See Iqbal*, 129 S.Ct. at 1949. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). The complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1940.

11

Determining whether a complaint will survive a motion to dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 1950. Ultimately, the inquiry focuses on the interplay between the factual allegations of the complaint and the dispositive issues of law in the action. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

      A.      Federal Claim

The Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* (FCRA), was enacted to ensure that consumer credit reporting agencies "exercise their grave responsibilities with fairness . . . ." 15 U.S.C. § 1681(a)(4). It generally applies to consumer reporting agencies or users of reported information who wilfully or negligently violate its provisions. *Rush v. Macy's New York*, 775 F.2d 1554, 1557 (11th Cir. 1985). A "consumer reporting agency" is one that "regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties . . . ." 15 U.S.C. § 1681a(f); *Rush*, 775 F.2d at 1557.

Plaintiffs allege that all defendants "wrongfully, improperly, and illegally reported negative information . . . to one or more credit reporting agencies . . . ." ECF No. 1–3, Ex. 1 ¶ 17. Plaintiffs do not allege that defendants meet the definition of a business typically subject to the act; rather, they describe them as just the opposite, "as a *provider* of information to the Credit Reporting Agencies . . . ." *Id*. (emphasis added). Instead, plaintiffs rely upon 15 U.S.C. § 1681s, which establishes a mechanism for administrative enforcement.

The Ninth Circuit in *Nelson* has held that 15 U.S.C. § 1681s(a)(2)(b) can support a private right of action under the FCRA. *Nelson*, 282 F.3d at 1060. In order to maintain suit, however, plaintiffs must first show that they notified a Consumer Reporting Agency (CRA) and attempted to find relief through the agency's grievance procedures. *See id.* ("Congress did not want furnishers of credit information exposed to suit by any and every consumer dissatisfied with the credit information furnished . . . . But Congress did provide a filtering mechanism in

section 1681s-2(b) by making the disputatious consumer notify a CRA and setting up the CRA to receive notice of the investigation by the furnisher."). Defendants noted plaintiffs' failure to allege such facts in their motion to dismiss; something which might normally warrant the court's allowing plaintiffs the opportunity to amend. ECF No. 6 at 6:24–25.

Plaintiffs do not attempt to show their compliance with *Nelson*, but rather argue that defendants qualify as "resellers" under 15 U.S.C. § 1681a(u); therefore, they say, plaintiffs' direct communications with defendants were sufficient to meet their obligation to utilize the dispute procedures. *Id*. The section of the FCRA plaintiffs cite defines a "reseller" as: "a consumer reporting agency that: (1) assembles and merges information contained in the database of another consumer reporting agency or multiple consumer reporting agencies concerning any consumer for purposes of furnishing such information to any third party, to the extent of such activities; and (2) does not maintain a database of the assembled or merged information from which new consumer reports are produced." 15 U.S.C. § 1681a(u). Applying it to this case, defendants do not meet the definition of a "consumer reporting agency," because they cannot credibly be described as "regularly [engaging] in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports . . ." 15 U.S.C. § 1681a(f). Furthermore, plaintiffs' reading of the Act would undermine Congress's intent to provide a filtering mechanism so that "furnishers of credit information [are not] exposed to suit by any and every consumer dissatisfied with the credit information furnished." *Nelson*, 282 F.3d at 1060. Because defendants do not meet the definition of a consumer reporting agency, they cannot then be said to meet the definition of a "reseller" under section 1681a(u). Plaintiffs have not and cannot allege any facts to suggest that they followed the dispute requirements set forth in *Nelson*. *See* Opp'n, ECF No. 19 at 5:7-14. This cause of action is DISMISSED WITH PREJUDICE.

/////

B.     Remaining State Claims

Subject to the conditions set forth in 28 U.S.C. § 1367(c), federal district courts may decline to exercise supplemental jurisdiction over state law claims. *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1000 (9th Cir. 1997) (en banc). The court's decision whether to exercise supplemental jurisdiction should be informed by values of "economy, convenience, fairness, and comity." *Id*. at 1001 (citations omitted). Primary responsibility for developing and applying state law rests with state courts. Therefore, when federal claims are eliminated before trial, district courts should usually decline to exercise supplemental jurisdiction. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Gini v. Las Vegas Metro. Police Dept.*, 40 F.3d 1041, 1046 (9th Cir. 1994) ("[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims"; *quoting Schneider v. TRW Inc.*, 938 F.2d 986, 993 (9th Cir. 1991)). Here, there are no factors suggesting this court should retain the case. The court thus declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims.

IV.    Motion To Strike

Having declined to exercise jurisdiction over the remaining claims, the court denies defendants' motion to strike as moot.

/////

/////

/////

/////

/////

/////

/////

/////

/////

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' September 7, 2011 motion to remand is DENIED;

2. Defendants' August 16, 2011 motion to dismiss is GRANTED in part;

3. Plaintiffs' state law claims are REMANDED to the Superior Court of the State of California for the County of Placer; and

4. Defendants' August 16, 2011 motion to strike is DENIED.

IT IS SO ORDERED.

DATED: January 20, 2012.

_____
UNITED STATES DISTRICT JUDGE